We will hear argument next in Case No. 24-1783, Ortiz & Associates Consulting v. VIZIO. Mr. Ramey. Good morning. My name is William Ramey and I represent Appellants Ortiz & Associates Consulting, LLC. If it pleases the Court, may I begin? Ortiz seeks the reversal of the fee shifting under 35 U.S.C. Section 285 because the District Court abused its discretion in finding the case exceptional because it was legal error for the District Court to use the alleged failure to mark the alleged failure to have damages to support an award under Section 285. Now that was only one of the many, you have the four factors the Court did, but that was the one that was truly legal error. And the Court first, when it dismissed the case with prejudice, that was the first sanction. It's well established under Fifth Circuit law that dismissal with prejudice is a sanction. Ortiz decided not to appeal that dismissal and went on down the road and the 285 motion was then filed because we have a situation where there was a 285 that considered that fact of the alleged failure to mark, alleged failure to have a viable damage claim to support a factor in the totality of the circumstances that justifies an award under Section 285. However, there's nothing unusual about this case, nothing that stands out from the rest. The other three factors chosen by the District Court were one that Ortiz failed to live up to the discovery obligations, failed to serve infringement contentions. That was something that was never raised by Vizio in the case in chief. They never brought that to the District Court's attention until on the pleading for the motion for fees. The fact that Vizio hadn't served discovery, or the part that Ortiz hadn't served discovery, shouldn't be a factor. Do I remember right? Tell me if I'm wrong, Pat. The District Court's fee opinion never says even if the failure to plead compliance with 287 is not, does not make the case brought exceptionally meritless. The other factors would support my fee award even by themselves. Is that right? The District Court did say that. Did say what? The District Court did say that the totality of the four circumstances. Right. I'm not asking my question clearly enough. I took it from the District Court's opinion that the judge never said even if there was no exceptionally bad failure to plead marking, that the other factors would alone support characterizing the case as exceptional. I didn't take that from the District Court's opinion, Your Honor. What I took from it was he was balancing all four of them, and the first one where I found there was clearly glare. Getting into the other three factors, the not following the discovery requirements of the court, we never had brought to our attention that infringement contentions weren't served. There was a procedure under the Miscellaneous Rule 62 in the Northern District of Texas where we could have applied to serve infringement contentions. In fact, the record evidence before the court is that Ortiz planned to do that after he got past the motion to dismiss stage. The other factor within that discovery obligation to the court were not serving discovery. It's not uncommon in many courts, as in the Western District of Texas, that we don't even start discovery until after the markment. There was still plenty of time on the court-ordered docket control order for Ortiz to serve discovery, get responses, and build his case. They planned to do that later on, conserving fees for both the plaintiff and the defendant, until after the motion to dismiss stage. The third factor that the court used in assessing fees was the settlement demand that was well below the merits of the case. Ortiz's settlement demand very early on in the case was $149,000. The fee motion that Vizio submitted only requested fees of $162,000. 66, I think. 66. 166. My bad. I'm reading that. And that includes the briefing on the motion for fees. So before that, the $149,000 was right along with what the parties had spent to date. And it's not uncommon for clients that can't afford to go into seven-digit figures spending on litigation to try to balance the cost of litigation with their settlement demands. And so early on in the case, they might- Counsel, just so we level set, you agree that the patents were expired, right? Yes, Your Honor. Okay. And so in light of that, then you'd be looking for, obviously, past damages of anything, not future, right? Yes, Your Honor. Okay. And because of kind of the circumstances of this case, do you disagree that you would need to plead something sufficient to show that you would have some plausible entitlement to past damages? We addressed that in our response to the motion to dismiss the first amended complaint. It will be bright for the Court's attention that we did-that we had, in fact, pled. We were saying that we were non-practicing entity with no products to mark. And that in all of our licensees, they didn't-that we had a settlement license, although there were a few of them prior to my time, that they weren't producing a patented article for under Ortiz's patents. And that's how we pled it in our response to the motion to dismiss. And that's-had we been provided a chance to amend our complaint, we would have added that back into the complaint. That's what we were asking for, was a chance to amend the complaint. But the decision was made at that time not to appeal the dismissal. And so that's what finds kind of a unique procedural history is where- Let me just see if I understand. I think you just said that in opposing the motion to dismiss, you said there is no license-we have no licensee practicing this patent. But you did not put that into your either original complaint or the amended complaint. That's correct, Your Honor. We were anticipating having the court direct-providing some guidance as to whether or not we were required to plead that when we put it into our motion to dismiss response. So your position is-which was not in the first amended complaint, but nonetheless your position now is that-I take it that there was no marking requirement because neither, in this case, Roku or Panasonic was practicing either of the two patents. Is that right? It was-my understanding from talking to the client when we were drafted in the brief is that I wasn't involved in those cases, Your Honor. I understand. But what I take it you're saying now is that there was-Roku and Panasonic did not practice the patents, and therefore there's no marking requirement. They did not believe they practiced the patents. Right. But then why did you sue them in the first place? Ortiz firmly believes they've infringed the patents. Well, but I think you just said that Ortiz advised you that they didn't practice the patents. That the defendants, Panasonic and Roku, believed that they were not infringing the patents. Well, the defendants believed that, but what did Ortiz believe? Ortiz believed that they were infringing the patents, and that's why they filed the Patent Infringement Act. That is a-we take that to be a different type of license. That's a license to end litigation, which we refer to in our briefing as a settlement license. This Court has viewed settlement licenses-notice the distinction between settlement licenses and licenses to produce a patented article. In the strict language of Section 287A, the intent of the parties has to be to produce a patented article for or under the patents at issue. And here, the defendants, my understanding is from the Roku and Panasonic, contended they did not infringe, and that they were not producing a patented article for or under the Ortiz patents from the- In the settlement agreements, did you have a provision relating to marking? In those prior settlement agreements, I don't believe those are-I don't believe that those settlement agreements were considered in the case below until the fee motion, and those were just motions to dismiss. And so I don't believe that's part of the record, Your Honor, in this case. Well, it was just a motion to dismiss, and it was dismissed, a naked motion to dismiss. It didn't say anything about marking, right? Have you seen those motions? Maybe I misunderstood the question. I'm sorry, Your Honor. Well, I was just following up on Judge Cunningham's question. Have you seen the motions to dismiss in those two prior cases? Your Honor, I did not review in preparation for the hearing today. The motions in those prior cases, I did not review them.  So my apologies for that. So we would simply say that the licenses that Ortiz was granted were licensed in litigation. The defendants, the high cost of litigation, the uncertainty of litigation, and so it's a different type of license, and by the strict language of 287A, it requires a person, a patentee, who's practicing the invention to mark, or a patentee who has licensed his inventions for another to practice those claims to produce a patented article. And here, neither of those Roku or Panasonic defendants. And that leads us back to the fact that it was legal error for the district court to use that as a factor in determining whether or not this case was exceptional. But I promise you to get to all four of the factors. And the one factor, the fourth factor that the judge talked about, well, let me talk about the settlement demands a little bit. The court said that a $149,000 settlement was a nuisance value settlement, and I would say that that isn't a nuisance value settlement for the stage of the case. The median income in America, I put it into the briefing, is far less than that at the time. So that can't be considered a nuisance value. And the cost that Vizio sought in the case of that was not a nuisance value. So that's a clear error in fact that the district used in assessing fees under Section 285. And the last one that Ortiz dismissed in many lawsuits were about the motion to the state. Would you agree, though, that the proposition that I think the district court was basing its ruling on this issue on, that a nuisance value, i.e., a settlement offer for less than the prospective cost of the defense, is a factor that can be considered in determining whether there is this is an exceptional case? Would you agree with that proposition? I would not. I've toiled with this one for a lot, in a lot of different cases, reading different opinions of this Court. And while I see that low settlement offers to extract a settlement from a defendant have been determined by this Court to be a factor supporting an exceptional case finding, what that value is and whether or not, whether or not I'm wrong. No, but just as an abstract matter. In other words, if a defendant is looking at, well, if I go all the way through a motion to dismiss or have to go through summary judgment with the attendant discovery, this is going to cost me somewhere between $200,000 and $1 million, let's say, if that's the defendant's calculation, and you offer a settlement for $100,000 or $150,000, do you regard that as a factor that the Court can take into account in determining whether there is an exceptional case in the instance? No, Your Honor. The only evidence in this case, the record evidence, is that it's a practice of many of the plaintiffs that I represent, that we start with a lower settlement offer, but we raise our settlement offer as we go on through the case. So that we approach it. Right. But that practice, as this Court has said, can be abusive, because what you can be either fairly or unfairly, depending on your perspective, accused of is having taken advantage of the fact that legal fees are very high these days, and you can offer something that is plenty enough to satisfy your client, but forces the other side to choose between defense and getting out of the case for less. In many instances, they'll get out of the case for less. That, this Court has said, at least nakedly expressed, is abusive. If the way that it's handled is abusive, then I could see this Court finding that as abusive. However, the way that this was handled in this particular case, looking solely at this case, it was not abusive. And this is, we're not applying generalities to settlement offers, but this Court places a high value on resolving cases. And to take away the ability to resolve cases early on, there's not all defendants that can afford, all plaintiffs that can afford a seven-figure defense, or a seven-figure going out there and suing people. So that's why the settlements are often structured, so that they can resolve cases before we get to that seven figures being spent by the plaintiff. And that's what contingent fees are for. Yes, Your Honor. And in some cases, yes, Your Honor. So if I'm not, I want to do a little bit more if I could real quick, and then I'll reserve the rest of my time. But I don't think, if you look at the facts of this case, there's nothing to indicate that it was abusive. So just as being a general factor, it wasn't abusive in this case. So it shouldn't be used as something to support an award of fees. And briefly, on the fourth one that we filed many lawsuits and dismissed before the motion to dismiss states, the district court didn't take any evidence of what those dismissals were. And this court has said in the rescue case, that 594-538-60, that we need more to base that as a factor. And I'll reserve the rest of my time if I may, Your Honor. Thank you. Please be free. Good morning, Your Honors. May it please the court, Stephen Hartzell on behalf of Vizio. The only issue before this court today is whether the district court abused its discretion in finding this case exceptional in awarding fees. The district court did not abuse its discretion. All the factors that the district court considered in its factual findings are its precedents and the records. I'd like to first start with the marking issue. The issue here is Ortiz. This court is very clear in Articat that it is the patentee's burden to plead compliance with the marking statute. And district courts, again, as Your Honor pointed out, the only damages available in this case were past damages. There are a lot of district courts that say, particularly when you're trying to seek past damages, you must plead compliance with the marking statute. What, in the circumstances of Ortiz's situation, would have sufficed as a pleading? I think that answer has two components. First, Ortiz would need to address itself. So I think Ortiz. You said we don't make any goods, so we've got nothing to mark. Yes, we don't make any products, and therefore we have nothing to mark. But the marking statute also applies to licensees. Ortiz has admitted it does have licensees. Marking statute does not use the word licensee, does it? No, but the court's precedents have said that marking does. Well, maybe not all licensees are of a piece. 287 says it's for or under. For or under the patent. Yes. And here I think the district court didn't go further than saying there were two companies, Panasonic and Roku, that had settled suits with dismissal with prejudice. What more should Ortiz have pled? Would it have been enough if it had pled what it said in its opposition to dismiss? I think with the licensee issue, there's three issues. I think it would need to say, one, we have no licensees, and therefore there's no other entity that ostensibly has to mark. Two, they would have to say that their licensees did mark, substantially mark, plead some facts or something like that. Or three, they would have to say that whatever products were being made or are subject to the license are not patented articles that don't fall under the statute. So I think in order for, in this case, for Ortiz to have made a pleading, it would need to have said, again, we are Ortiz, we're a nonpractice entity, we don't have products to mark. Furthermore, we either don't have licensees, which I don't think Ortiz could make that statement under Rule 11 because it has licensees. Well, suppose it had said we don't have licensees in a sense that would be sufficient to say that their products are made for or under, I think the language is the patentee, not even under the patent. Under the patentee, that's right. It's been construed that way. Yeah, it's a little bit odd, but for or under the patentee. The two, we have certain settlements. Two of them are ones in which we believed that, based on the information we had at the time we sued, that the defendants had products that infringed, but the two defendants insisted otherwise. It seems to me like that would be enough, and if that were enough, how in the world were you harmed by their failure to say that? Potentially it would have been enough. I think it would depend on the wordings of whether, again, whether the district court would find that they've pleaded sufficient facts to allow it to make a claim for damages such that the district court could actually grant relief by the lawsuit. Here, though, we apprised Ortiz of the requirement to plead marking, this is Articat, in our first motion to dismiss as well as all the case law. Ortiz filed an amended complaint, but Ortiz ignored all of the case law and evidence that we presented in our first motion to dismiss. And, again, it filed a complaint that didn't address marking or damages or any of the case law at all. It essentially just doubled down and said, we don't have to do it. And the district court, and so the district court, in dismissing this case, found that Roku and Panasonic have licenses by operational law, but as an independent basis, the district court said that Ortiz was on notice of the requirement to plead compliance with the marking statute, and it failed to do it. It didn't say anything. And as for the harm, in filing this lawsuit, you know, this is a must. Again, to follow up on Judge Gerardo's question, what difference did that make in terms of the injury to you? The injury is, again, because only past damages were available, Ortiz must make a requisite pleading in order to unlock those past damages. By not doing so, this case is frivolous in that there's nothing the district court can't do. Yes, but if the district court is right in thinking that the marking requirement applied in this case, then all those past damages go away. But that happens whether they pleaded or not. In other words, if you ended up at, if this case went on, you would be able to say, number one, we think the marking requirement applies, and number two, they weren't marked, therefore, you get no past damages.  Right. And why was the fact that that wasn't in the pleading injurious to you? It's injurious to us because they filed the complaint, and that requires VIZIO to read the patents, look up defenses, start looking at the products at issue, participate in scheduling conferences. VIZIO has to spend a lot of time, money, and resources in starting to defend itself against a case in which no viable damage theory was ever pled. Thus, the district court would never be able to offer any relief. That's how VIZIO is injured. I think probably the point you're getting at is, in this case in particular, I think had they made the requisite pleading, I think we would probably ultimately at the end of the day, based on what's kind of come out in some of the briefing, have wound up at this point maybe in a summary judgment context, and it would have just been, again, even more time and money and effort. Now, the assumption that the district court made, I think it's an assumption, was that if the back damages were unavailable, given the fact that the patent had expired, then there would be no damages at all. But as I understand the record, and correct me if I'm not right about this, but there's a 6-year statute of limitations. The case was filed in 23. So that takes us back to 17. But the two settlements, I think, were in 19. So even if those two settlements constitute licenses for which the marking requirement applied, then there still would be damages, would there not, between 17 and 19? Potentially. But again, I also think this comes to the district courts. But didn't the district court kind of assume away all of the back damages? Well, the district court, its dismissal order was based on two things. One is what I would call the operation by law of Panasonic and Roku. The district court agreed with our legal analysis and logic, and Ortiz did not dispute any of that in their opposition. But the district court also said just as an independent basis, Ortiz never pled anything. And that in and of itself was an independent basis to wipe out all past damages because it never made any pleading that it would allow it to receive any type of past damages, even if only a fraction. If I could turn briefly to the other issues, the district court also found, I think rightly, that in this case it's undisputed that Ortiz did not serve infringement contentions, initial disclosures, or anything like that. The district court's scheduling order was very clear. I think it's appendix page 563, that the pendency of a Rule 12 motion does not stay the litigation, absent an order from the court. Ortiz never took it upon it, never went to the district court and said, can we pause this until the court rules on the motion to dismiss? Ortiz admits in its briefing to the district court that it unilaterally took it upon itself to say, we're not going to serve any of this stuff, and we'll take care of it later when and if we survive the motion to dismiss. I heard counsel talk about the rules, the Texas patent rules that allow you to amend, that allows you to make amendments for good cause. That's usually for, you know, we've added products, we've used source code, and we want to refine our theories. I do not think the good cause is, I unilaterally decided not to follow the court's rules, and now I want to do over. Can I ask, so we have some cases, and just, you know, correct me about these premises, I guess I think of the Rembrandt case that talks about how the fees that are awarded have to be, have some nexus, causal connection to the conduct that made the case exceptional. How would that be true of the failure to file infringement contentions? I understand how it would be true if the case from the get-go was, you know, exceptionally under-pled, because then the whole case would be the result. But how does this failure to file infringement contentions cause any excess fees? I think this goes to the, I'm not sure it goes to excess fees, but I think it goes to the Supreme Court's octane fitness, where it's also, you consider the manner in which the case was litigated. And so I think it goes, you know, I think octane fitness talks about substantial weakness of your litigating position as well as the manner in which you litigated the case. And here, I guess I'm going to get you there. I guess part of what I'm trying to figure out is, for purposes of this question only, if I had some doubts about the failure to plead ground, whether it really could be the case that either the fee that was awarded or any fees could rest on the other bases that the district court considered. I think this answers your question. I don't read the district court's opinion as saying that the four factors that it considered, that each one in and of itself is an independent basis that allows fees. I understand the district court's opinion to say, the district court has considered these four factors, and when you consider the four factors in totality, the district court said that this case was exceptional. Can I change the subject to this nuisance offer business and this concept of abusiveness? What exactly is abusive or wrong about, and now I'm going to make up some facts, a moneyless patent owner bringing lawsuits against a variety of defendants that, and I'm going to assume here now, is substantively non-frivolous, and hoping that a few of the defendants will pay up to get out of the suit, again, non-frivolous claims, providing the plaintiff some money to go up against the wealthy defendants who have vast resources to outspend the plaintiff that the plaintiff could not possibly match without getting funding. What's abusive about that? In the abstract, I think, I haven't really given this much thought, but I would then the patent owner would be able to really articulate a case on the merits. I think the problem with this case is the settlement demand that was made was, as Ortiz pointed out in his briefing to the district court, was based on Ramey LLP, the litigation law firm's practice. It's not even Ortiz's practice. It wasn't based on the value of the technology. It's not based on any of the merits of the case. Here, it seems to be, and this is what the district court found, the settlement demand was just- We have this kind of unavoidable fact that patent litigation is fantastically expensive. The cost of it can never be outside the real-world view of both parties in how to proceed. So I guess what I struggle with here and have been struggling with even outside this case is how to think about this phenomenon of bringing multiple suits as bearing on an inquiry without the premise of, I'm going to just call it frivolousness of the suit. I'm using a broad concept of frivolous to include here for purposes of this question, failure to plead something. If I understand your question, I think one of the hallmarks of this work should kind of consider is really whether the patent owner is willing to test the merits of its case. And here, the district court found, the district court looked at the prior litigation history and noticed that, I think before Ortiz sued Vizio, there had been 11 suits that had been filed and- They're too poor to test it unless they get some settlements to provide funding to test it against the big players. I think they need to test the merits of their case. I'm not sure if that answers your question. I also see that I'm over my time. Besides the issue on marking, is there anything else the court pointed to regarding the substantive weakness of a litigation position?  The court, we raised other what I would call technical issues about within the claims and whether systems and servers and all that kind of stuff. But we raised all that in our briefing, but the district court did not address that in its opinion. It confined itself to marking issue. If I could ask one more question along the lines of Judge Conant's question, what, in your view, would have been minimally sufficient to put in the complaint to satisfy the marking requirement under circumstances in this case in which, number one, the, obviously, the patentee is not making and selling the goods themselves, and number two, let's assume that the patentee will treat the settlements as licenses but has information that the licensees do not require, regard their sales of their products as being covered by the patents. What, under those circumstances, what exactly is the minimally sufficient pleading that should have shown up in the First Amendment complaint? I think, again, we need to say we Ortiz are nonpracticing. We don't have products to mark. And then as far as the licensees, again, I don't think the case law, I think the case law is it really doesn't matter what the licensee thinks. It's whether the claim language reads on the patent. So if the licensee has a license to the 299. Right, but if the licensee doesn't think that the products are covered by the patents, they're not going to mark. But that can be whether you have an obligation to mark or not. That's something that can be put into settlement agreement. And if you're in favor of that. Well, I know, but take these facts. So you've got exactly this case, plus we'll assume Ortiz knows that the Roku and Panasonic do not believe that their products are covered by the patents. Under those circumstances, what should have been in the complaint about the Roku and Panasonic products? Then they would, I think Ortiz would have needed to have, going back to what I said earlier, pleaded that the products are not covered for whatever facts and reasons they can plead. Well, Ortiz can hardly say that they weren't covered since Ortiz sued them. But he can say that they don't believe they weren't covered and that's why they're not marking. And Ortiz would also need to plead facts showing that they undertook reasonable steps and efforts to get its licensees to mark the patents. And again, I think that would be something that the district court then would have to decide whether that was sufficient or not. Are there any other questions? I thank the court for its time. Thank you. Can you give three minutes? Thank you, Your Honor. If I may address a couple things very quickly. The district court's order, in my opinion, places a new burden on a patent plaintiff to plead compliance with Section 287A when some other lawsuit has been dismissed with prejudice. That could be taken from this holding. I think that 287A is a very specific statute, as the court was addressing with my colleague on the other side. It requires a patentee who produces a patent article to mark or a patentee who licenses another to produce a patent article under the patentee. And that is correct language. And here, regardless of whether Ortiz settled lawsuits with other defendants, if those settlements weren't of such, which aren't in this record, but if they weren't of such character that they were to produce a patented article under the patentee's patents, that wouldn't trigger 287A by the express language of 287A. And I go back to this court's Arctic CAC holding that Section 287 is a limitation on damages, not an affirmative defense. And that even comes back from 1984 from the Motorola v. United States case, 729 Fed 2nd 765. And maybe more importantly for this court's resolution of this appeal is that compliance with Section 287 is a question of fact. And we're at the pleading stage. At the pleading stage, all reasonable inferences are taken for the patentee. We request a plea to amend if the district court found that we need to put something else in that wasn't granted. We didn't appeal that. But that's why we view that a legal error for the district court to consider that as a factor. But you mentioned Arctic CAC. And it does specifically state that the patentee bears the burden of pleading and proving he complied with the 287A. Mark your requirement. Yes, Your Honor. And so I like to look at the facts. Arctic CAC was very specific, right? We had a patentee who licensed a third party, maybe I'm going to forget that, but licensed Honda to produce a patented article. Honda said, oh, we're not going to mark our products in the settlement agreement. And then they went on, and Honda wasn't marking their products. The patentee went off and sued someone else. That other person brought up the fact that, hey, Honda hasn't been marking their patents. And this court said, here, even though by that time Arctic CAC had quit producing their own products, though they were an MPE, by that time they were previously producing a patented article. And then so this court then said, well, in this particular case, here's a license agreement that says, hey, Honda, you're here. I believe it's Honda. My apologies if I'm wrong. But to go on and produce this patented article, and you have to, you know. And then Honda said, well, we're not going to put a patent number on that. Specifically, the court found that that MPE, that under those circumstances or those facts, an MPE does have to mark it. We're not disagreeing with that. If we were out there and we had licensed Roku to say, hey, you're to produce this patented article. And Roku said, yeah, but we're not going to mark. That would be a very different set of facts than what we have here. Here we have Roku saying, we just want out of this litigation. And Panasonic, we just want out of this litigation. That's very different than, if I may continue, I'm out of time now. But I'll tie it up. Did I address your question, Your Honor? If you had more to the answer, I want to hear the conclusion. I think that that's what Arctic CAC, I think, is a very specific set of facts. That 100% means that MPEs that produce, that license someone to produce a patented article, and that person does produce that patented article, have an obligation to mark. And I think that we go back to what the intention of the parties is when they enter into that settlement agreement, settlement license, or licensing agreement. That's where, and that's just not on the record here, but that's what's going to tell whether there was an obligation to mark. So this is my last question to you. Are you contending that there should be a different rule for MPEs with respect to what Arctic CAC requires? No, Your Honor. Versus other companies? I'm sorry, I don't think there should be a different rule. I think that MPEs should be held to the exact same standards. And it's whether you're licensing for or under the patentee's patents to produce a patented article. If the other side is saying they're doing that, you're never going to have a case to settle if there just could be an impediment to settle. Here I'm saying that there, it just goes back to contract interpretation. Just go back, what do the parties intend when they enter into this? I mean, a patentee, a plaintiff, can intend all day long that the defendant needs to mark. And if the defendant says, no, we're never going to mark, cases will never resolve. And so if the parties are clear in their intentions in the agreement, that settles this issue for the court because the courts, just because this is a patent infringement case where someone sued someone for patent infringement doesn't change the age-old doctrine that we go back to state law and look at what was the intents of the parties that's expressed in the writing. That every clause in there has meaning. This can be given effect. You can't read out certain things. If the defendant says, hey, we don't infringe, we're not marking. We don't infringe. And the patentee says, well, there's a disagreement on infringement, a disagreement on validity, but we just want to end this litigation. That makes it a very different license, settlement license, or whatever you want to call it, than a license to produce a patented article for or under the patentee's patents. And that's all I mean by that, Your Honor. And with that, I thank the Court. If there's any questions, I can answer. I thank you all very much. Thank you. Thanks to all. Counsel. Cases agreed.